UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BRENDA L. CLARK,                 :
                                 :
              Plaintiff          :    No. 4:11-CV-00295
                                 :
       vs.                       :    (Judge Kosik)
                                 :
MICHAEL J. ASTRUE,               :
COMMISSIONER OF SOCIAL           :          **FILED**
SECURITY,                        :          **SCRANTON**
                                 :
              Defendant          :          MAR 3 0 2012

**MEMORANDUM**

Per_____
              DEPUTY CLERK

**BACKGROUND**

       The above-captioned action is one seeking review of a
decision of the Commissioner of Social Security ("Commissioner")
denying Plaintiff Brenda L. Clark's claim for social security
supplemental security income benefits.

       Supplemental security income is a federal income
supplement program funded by general tax revenues (not social
security taxes).  It is designed to help aged, blind or other
disabled individuals who have little or no income.

       Clark, who was born on January 13, 1969, is a United
States citizen, and at all times relevant to this matter was
considered a "younger individual"[1] whose age would not seriously

_____

1.  The Social Security regulations state that "[t]he term
younger individual is used to denote an individual 18 through
49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

impact her ability to adjust to other work. 20 C.F.R. § 416.963. Tr. 22, 70 and 96.[2]

Although Clark attended special education classes during her elementary and secondary schooling, she graduated from high school in 1988 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 47, 105, 110 and 117. Clark has a driver's license. Tr. 50. In a document dated February 5, 2007, filed with the Social Security Administration entitled "Function Report – Adult" Clark stated that she did drive. Tr. 117. However, at the administrative hearing held in this case on August 20, 2008, Clark testified that she is not able to drive because of the medications she is taking. Tr. 50.

Clark has past relevant employment[3] as a cashier and seasonal laborer which was described as unskilled to semi-skilled, light to medium work. Tr. 22, 61-61 and 107.

Records of the Social Security Administration reveal that Clark had earnings in the years 1985 through 1995, 1997, 1998, 2001 and 2002. Tr. 99. Clark's total earnings during those years were $68,808.66. Id. Clark's highest annual earnings were

_____

2.  References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on April 15, 2011.

3.  Past relevant employment in the present case means work performed by Clark during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

in 1994 ($11,455.88). Id.  In the last year that she worked, 2002, she earned $2,283.82. Id.  Clark has not worked since February 1, 2002. Tr. 106.

Clark claims that she became disabled on December 5, 2004,[4] because of panic attacks, bipolar disorder, anxiety and obsessive compulsive disorder. Tr. 106.  She further alleged as follows: "When my nerves act up I start to shake and I need to lay down when the panic sets in. I have bipolar, one minute I am nice the next I am not." Id.  Clark claims that she has suicidal thoughts and also homicidal thoughts, including towards her children. Tr. 30.  Clark, however, indicated that she would not act on those thoughts. Tr. 30.  Clark does not allege that she is disabled because of a physical condition. Id.

In the "Function Report - Adult" dated February 5, 2007, Clark when asked to check items which her "illnesses, injuries, or conditions affect" did not check lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, completing tasks, understanding, following instructions, using hands, and getting along with others. Tr. 119. Clark only checked two items: memory and concentration. Id.  Clark also indicated that she had no problem with personal care; she is able to take care of her three minor children; she is able to shop in stores; she is able to pay bills, count change, handle a

---

4.  Clark was 35 years of age on the alleged disability onset date and is presently 43 years of age.

savings account and use a checkbook and money orders; and she spends time with others.  Tr. 41-42 and 113-121.

At the administrative hearing held in this case, when the father of the three children was asked if there was any reason the three children should not remain with their mother, the father answered "no." Tr. 58.

On December 12, 2006, Clark protectively filed[5] an application for supplemental security income benefits. Tr. 13, 70 and 96.  The alleged disability onset date of December 5, 2004, has no impact on Clark's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met."  See C.F.R. § 416.501.  Consequently, Clark is not eligible for SSI benefits for any period prior to January 1, 2007.

On June 22, 2007, the Bureau of Disability Determination[6] denied Clark's application for supplemental

---

5.  Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

6.  The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for supplemental security income benefits on behalf
(continued...)

security income benefits. Tr. 71-75.  On June 26, 2007, Clark requested a hearing before an administrative law judge. Tr. 76. Approximately 14 months later, a hearing commenced on August 20, 2008, before an administrative law judge. Tr. 24-68.  On October 29, 2008, the administrative law judge issued a decision denying Clark's application. Tr. 13-23.  On December 24, 2008, Clark requested that the Appeals Council review the administrative law judge's decision.  Tr. 9 and 144-145.  After a little over two years had passed, the Appeals Council on January 13, 2011, concluded that there was no basis upon which to grant Clark's request for review. Tr. 1-4.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Clark then filed a complaint in this court on February 11, 2011.  Supporting and opposing briefs were submitted and the appeal[7] became ripe for disposition on July 29, 2011, when Clark elected not to file a reply brief.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d

---

6.  (...continued)
of the Social Security Administration.  Tr. 71.

7.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181
F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d
857, 858 (3d Cir. 1995). However, our review of the
Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is
to determine whether those findings are supported by "substantial
evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.
1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).
Factual findings which are supported by substantial evidence must
be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34,
38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported
by substantial evidence, we are bound by those findings, even if
we would have decided the factual inquiry differently."); Cotter
v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by
the Secretary must be accepted as conclusive by a reviewing court
if supported by substantial evidence."); Keefe v. Shalala, 71
F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176
(4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529
n.11 (11th Cir. 1990).

     Substantial evidence "does not mean a large or
considerable amount of evidence, but 'rather such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565
(1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197,
229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d
198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360

(3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence, but less than a preponderance. <u>Brown</u>, 845 F.2d at 1213.  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Commission</u>, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," <u>Cotter</u>, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason</u>, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Johnson</u>, 529 F.3d at 203; <u>Cotter</u>, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims.  See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[8] (2) has an impairment

---

8.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R.
(continued...)

that is severe or a combination of impairments that is severe,[9]
(3) has an impairment or combination of impairments that meets or
equals the requirements of a listed impairment,[10] (4) has the
residual functional capacity to return to his or her past work and
(5) if not, whether he or she can perform other work in the
national economy. Id. As part of step four the administrative law
judge must determine the claimant's residual functional capacity.
Id.

---

8.   (...continued)
§ 416.910.

9.   The determination of whether a claimant has any severe
impairments, at step two of the sequential evaluation process, is
a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no
impairment or combination of impairments which significantly
limits the claimant's physical or mental abilities to perform
basic work activities, the claimant is "not disabled" and the
evaluation process ends at step two.  Id.  If a claimant has any
severe impairments, the evaluation process continues.   20 C.F.R.
§ 416.920(d)-(g). Furthermore, all medically determinable
impairments, severe and non-severe, are considered in the
subsequent steps of the sequential evaluation process.   20 C.F.R.
§§ 416.923 and 416.945(a)(2).

10.   If the claimant has an impairment or combination of
impairments that meets or equals a listed impairment, the
claimant is disabled.   If the claimant does not have an
impairment or combination of impairments that meets or equals a
listed impairment, the sequential evaluation process proceeds to
the next step. 20 C.F.R. § 404.1525 explains that the listing of
impairments "describes for each of the major body systems
impairments that [are] consider[ed] to be severe enough to
prevent an individual from doing any gainful activity, regardless
of his or her age, education, or work experience."   Section
404.1525 also explains that if an impairment does not meet or
medically equal the criteria of a listing an applicant for
benefits may still be found disabled at a later step in the
sequential evaluation process.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The administrative law judge at step one of the sequential evaluation process found that Clark had not engaged in substantial gainful work activity since December 12, 2006, the application date. Tr. 15.

At step two of the sequential evaluation process, the administrative law judge found that Clark had the following severe impairments: "major depressive disorder, bipolar disorder, mixed Type II, and borderline personality disorder." Id.  The administrative law judge found that Clark had no severe physical impairment. Tr. 15.  The administrative law judge further found that Clark's anxiety/panic disorder and obsessive compulsive disorder were non-severe impairments. Tr. 15.

10

At step three of the sequential evaluation process, the administrative law judge found that Clark's impairments did not individually or in combination meet or equal a listed impairment. Tr. 15-16.

At step four of the sequential evaluation process, the administrative law judge found that Clark had the

> residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is not able to maintain focus and/or concentration for extended periods longer than two hours at a time and would require a break from such focus/concentration for five to ten minutes. The claimant cannot engage in work requiring extreme focus or concentration and she would have difficulty adapting to work changes in the work setting on more than an occasional basis.  She has difficulty establishing work goals or quotas independent of supervisory direction and she would need some supervisory prompting for goal setting.  The claimant cannot interact with co-workers and the public on a repeated basis.

Tr. 16.  The administrative law judge further found that Clark could not perform her past relevant work as a cashier and a seasonal laborer because that work was "stressful, involved strict concentration, or involved contact with the public." Tr. 22. In setting the residual functional capacity, the administrative law judge relied on the opinion of Elizabeth Ciaravino, Ph.D., a state agency psychologist, who examined Clark on May 2, 2007. Tr. 187-192.  Dr. Ciaravino gave Clark a Global Assessment of Functioning (GAF) score of 60, which is indicative of moderate

mental difficulties.[11]   The administrative law judge also relied

on the June 20, 2007, opinion of Helen Parshall, Ph.D., a state

agency psychologist, who reviewed Clark's medical records. Tr.

193-207.

Dr. Parshall concluded that Clark's mental impairments did not

meet the criteria of any listed mental impairment and that Clark

was "able to meet the basic mental demands of competitive work on

a sustained basis despite the limitations resulting from her

impairment." Tr. 203 and 208.

---

11.   The Diagnostic and Statistical Manual of Mental Disorders
uses a multiaxial approach in diagnosing mental disorders. The
GAF score allows a clinician to indicate his judgment of a
person's overall psychological, social and occupational
functioning, in order to assess the person's mental health
illness.  *Diagnostic and Statistical Manual of Mental Disorders*
3-32 (4th ed. 1994). A GAF score is set within a particular range
if either the symptom severity or the level of functioning falls
within that range. Id. The score is useful in planning treatment
and predicting outcomes. Id.   A GAF score of 21-30 represents
behavior considerably influenced by delusions or hallucinations
or serious impairment in communication or judgment or inability
to function in almost all areas.   A GAF score of 31-40 represents
some impairment in reality testing or communication or major
impairment in several areas, such as work or school, family
relations, judgment, thinking or mood. Id.   A GAF score of 41-50
indicates serious symptoms or any serious impairment in social,
occupational or school functioning. Id.   A GAF score of 51 to 60
represents moderate symptoms or any moderate difficulty in
social, occupational, or school functioning. Id. A GAF score of
61 to 70 represents some mild symptoms or some difficulty in
social, occupational, or school functioning, but generally
functioning pretty well with some meaningful interpersonal
relationships. Id.

Based on the above residual functional capacity and the testimony of a vocational expert, the administrative law judge, at step five of the sequential evaluation process, found that Clark could perform unskilled work as a bench assembler, visual inspector and a cleaner, and that there were a significant number of such jobs in the state and regional economies. Tr. 23.

The administrative record in this case is 373 pages in length, primarily consisting of medical and vocational records. Clark makes a general argument that the administrative law judge's decision is not supported by substantial evidence and then makes the following additional arguments: (1) the administrative law judge erred at step 3 of the sequential evaluation process by failing to find that Clark met Listing 12.04 – Affective Disorders; (2) the administrative law judge erred in setting the residual functional capacity; and (3) the administrative law judge erred in assessing Clark's credibility.

We have thoroughly reviewed the record in this case and find no merit in Clark's arguments. The administrative law judge did an adequate job of reviewing Clark's vocational history and medical records in his decision. Tr. 13-23.  Furthermore, the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Doc. 10, Brief of Defendant. Because the administrative law judge adequately reviewed the

medical evidence in his decision, we will only comment on a few items.

Initially, we will note that no treating physician, psychiatrist or psychologist has indicated that Clark suffered from mental functional limitations that would preclude her from engaging in the limited range of work set by the administrative law judge in his decision for the requisite statutory 12 month period.

On September 13, 2005, Clark sought mental health treatment at Tri-County Human Services, located in Carbondale, Pennsylvania. Tr. 184-185. The record reveals that the treatment at Tri-County Human Services involved at most 10 appointments during the time period September, 2005, to the end of December, 2006.  The report of the initial intake screening on September 13th reveals that Clark was diagnosed with major depressive disorder with psychotic features and given a GAF score of 55, which represents moderate symptoms. Id.  In October 2005, Clark was examined by George Sowerby, M.D., a psychiatrist at Tri-County Human Services. Tr. 181-183. Dr. Sowerby diagnosed Clark as suffering from bipolar disorder and borderline personality disorder and gave Clark a GAF score in the range of 45-55. Tr. 183.  This assessment of the GAF score is ambiguous, because it can represent either serious or moderate symptoms.

14

Clark did not return to Tri-County Human Services until May 9, 2006, at which time she was seen by a physician's assistant on that date, as well as on June 5 and 30, August 17, September 14 and November 28, 2006.  Tr.173 and 175-179.  Clark was seen by Dr. Sowerby on October 12 and December 21, 2006. Tr. 172 and 174. At the appointment on October 12th, Dr. Sowerby noted that Clark had no formal thought disorder or evidence of psychosis, her affect was broad and appropriate, and her speech was verbal and productive. Tr. 174.  At the appointment on December 21st, Dr. Sowerby noted that Clark's mother recently was diagnosed with Creutzfeldt-Jakob disease and Clark was having a difficult time coping with that situation. Tr. 172.  Dr. Sowerby stated that Clark's neutral to euthymic mood was incongruous with the content of her speech. Id.  Clark stated that she had put up all her Christmas decorations, planned to have Christmas dinner with her family, and had been trying to go about business as usual. Id. Clark reported that she had more energy on her decreased dose of Seroquel. Id.

There are non-treating, examining psychologists who concluded that Clark met Listings 12.04 and 12.06 and was not capable of engaging in employment. Tr. 210-219 and 366-373. John Harvey, Ph.D., a licensed psychologist, evaluated Clark on behalf of the Lackawanna County Office of Public Assistance in

15

August and October, 2007. Tr. 210-219. Dr. Harvey initially
interviewed Clark on August 30th and then administered a battery
of tests on October 17, 2007. Id.  Dr. Harvey noted that although
Clark did not overtly malinger, she had a tendency to exaggerate
her symptoms, which he attributed to somatic features. Tr. 216-
217.  Even in light of the tendency to exaggerate, Dr. Harvey
concluded that Clark was unable to engage in gainful employment.
Id.  Because Dr. Harvey was a non-treating psychologist, his
opinion was entitled to no more weight than the opinions of the
Bureau of Disability Determination psychologists.  The
administrative law judge was not obligated to accept Dr. Harvey's
conclusions.

        The non-treating psychologists, Kathy Cerra, M.A., and
Ronald Refice, Ph.D., who concluded that Clark met Listing 12.04
(Affective Disorders) and 12.06 (Anxiety-Related Disorders) were
reviewing Clark's mental condition on behalf of the Pennsylvania
Department of Public Welfare. Tr. 366-373.  Again the
administrative law judge was not obligated to accept the
conclusions of these psychologists, but could rely on the opinion
of Dr. Parshall that Clark did not meet the criteria of any
listing.

        In order to meet either listing 12.04 or 12.06, Clark
had to have either two "marked" limitations in the categories of

16

activities of daily living; maintaining social functioning; and
concentration, persistence or pace; or one "marked" limitation
coupled with repeated episodes of decompensation, each of an
extended duration. See 20 C.F.R., Pt. 4040, Subpt. P, App. 1, §§
12.04 and 12.06.  Dr. Parshall concluded that Clark had mild
restrictions of activities of daily living; mild difficulties in
maintaining social functioning; moderate difficulties in
maintaining concentration, persistence or pace; and no episodes of
decompensation. Tr. 198-208.  Also, Dr. Ciaravino, although
finding that Clark had marked limitations with respect to carrying
out detailed instructions and making judgments on simple work-
related decisions, did not make this assessment with respect to
whether Clark met a listing, but with respect to Clark's mental
residual functional capacity at step 4 of the sequential
evaluation process.  The administrative law judge took those
limitations into consideration when he set Clark's mental residual
functional capacity, i.e., the administrative law judge found that
Clark was not able  "to maintain focus and/or concentration for
extended periods longer than two hours at a time and would require
a break from such focus/concentration for five to ten minutes.
The claimant cannot engage in work requiring extreme focus or
concentration and she would have difficulty adapting to work
changes in the work setting on more than an occasional basis.  She

17

has difficulty establishing work goals or quotas independent of
supervisory direction and she would need some supervisory
prompting for goal setting.  The claimant cannot interact with co-
workers and the public on a repeated basis."

The administrative law judge's reliance on the opinion
of Dr. Parshall was appropriate. See Chandler v. Commissioner of
Soc. Sec.,__F.3d.__, 2011 WL 6062067 at *4 (3d Cir. Dec. 7.
2011)("Having found that the [state agency physician's] report was
properly considered by the ALJ, we readily conclude that the ALJ's
decision was supported by substantial evidence[.]").

The administrative law judge appropriately took into
account Clark's mental limitations in the residual functional
capacity assessment.  The administrative law judge limited Clark
to low stress unskilled work with little contact with co-workers
or the public and which allowed some supervisory prompting.
The vocational expert identified jobs that met those requirements
and the administrative law judge appropriately accepted the
vocational expert's testimony.

The administrative law judge stated that Clark's
statements concerning the intensity, persistence and limiting
effects of her symptoms were not credible to the extent that they
were inconsistent with the ability to perform a limited range of
unskilled work. Tr. 20-21.  The administrative law judge was not

required to accept Clark's subjective claims regarding her mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ."  Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility.").  Because the administrative law judge observed Clark when she testified at the hearing on August 20, 2008, the administrative law judge is the one best suited to assess the credibility of Clark.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.

19